The next case today is Malik Breon Hollis v. Matthew Magnusson, appeal number 20-1160. Attorney Hwanek, please introduce yourself for the record and proceed with your argument. Good morning, your honors. May it please the court, my name is Jim Hwanek. I represent the appellant Malik Hollis. May I have two minutes at the end, your honor? Yes, you may. Thank you. Your honors, for some 35 years now, since the 1986 Batson decision, both lawyers and judges have complained. It started with Thurgood Marshall back in 1986 and has gone on for nearly four decades now that Batson is a toothless tiger. This case, your honors, is a classic example of that. Counsel, this is a habeas proceeding. You have to convince us that the decision of the unreasonable application of fact and included in the unreasonable application of fact is a presumption that the state factual findings are correct. Batson may not have accomplished what its originators had hoped for, but that's not the issue before us. Could you get into the weeds of those two arguments, please? Yes. This violates federal law as defined by the Supreme Court and it's a very unreasonable application of the logical facts in this case. First of all, there were three clear errors before we even get to the Batson issue. The trial judge himself acknowledged those three errors. He acknowledges it in the first sentence of his order denying our motion for new trial. The first error was that at the sidebar at the time of trial, he applied the Swain standard. He did not apply the Batson standard. He acknowledged the error, for sure, but then when he understood it, he then, at least in his view, he analyzed the issue as he was supposed to analyze it. He focused very specifically on this exercise of the peremptory challenge and made the finding that he did that he thought the law required him to make. So why does that earlier error, which he acknowledged, why does that still matter? Well, he didn't do it at the time of trial. At the time of trial, he determined there was a lack of systemic discrimination here. At the time of trial, he did not apply the three-pronged Batson test. It wasn't until after the verdict, after we filed a motion for new trial, two months after the trial, that he rehabilitated the record and he took in new evidence. I think the Miller-Ell decision, among others, says you can't do that. He went out of his way to say he didn't consider that additional evidence. He was very explicit about that, wasn't he, counsel, that even though, yes, he heard it, it was offered, but he said he did not consider it. Instead, he focused on the reason that was given contemporaneously with the objection of defense counsel and then talked about the demeanor of state's counsel when that objection was raised. So he made his ruling in terms that can be viewed as contemporary, what was said to him at the time of the objection and what he observed at the time of the objection. Isn't that what he did? That's what he said. Of course, he was referring to the prosecutor's representation that she struck the lone black juror, the lone black person in the room of 120 or so white people, on the basis that that lone black juror had an 11th grade education as opposed to the 12th grade level educations of the other white jurors. He accepted the prosecutor's argument, even though the prosecutor excluded three college level jurors. That makes absolutely no sense. That's a completely... Didn't what happened here, phrased as we must in looking at it the way the judge did, is that the prosecutor struck out of the 32 or 34 jurors seated when you're done with the challenges. She struck first any who had any record and then when she was done, she struck the only person who didn't have a high school degree. And the judge says, I believe that was her reason. I find her credible. How do we get around that? Well, first of all, there's no record of that. She didn't say that again at the time of trial. She said his education. When surprised out of nowhere, she immediately simply said education. And ironically, apparently everyone in Maine thinks education is an important thing because that's one of the few things that is listed on the juror sheet is education level. And so she said, this is the only one with an 11. Yeah, that's another issue. Well, okay. When you say 11th grade education, are you talking about Nearfield Academy where they're studying Greek and Latin? Come on, you know that's not the way voir dire is done. A common one is someone's wearing a tie. I'm not going to pick them. Well, maybe it is the way we should be doing voir dire when we're talking about excluding the lone black person in the room from a jury in a highly racially charged trial. This is not just completely belittling. But now you've got to listen to what Judge Lynch said at the beginning. You're not arguing before the Supreme Court on a cert granted as to whether that should be revised to get rid of peremptories. You've got a habeas case in which we have to ask you under clearly established law, not new law, was there an unreasonable application of that law to facts? And you've got a credibility finding. So you have some heavy work to do. And I think you need to focus on why we would say that we're not going to acknowledge the credibility finding. Almost all of these cases are habeas cases that work their way up and they get to the U.S. Supreme Court. And the problem here is the U.S. Supreme Court is fine. The Miller L. decision, Justice Kavanaugh's decision in Flowers in 2019 would have made Thurgood Marshall proud. Counsel, we're happy to hear you approve of what the Supreme Court has done. But let me focus in on the credibility determination. Sometimes in these habeas cases where the matter is resolved in a hearing, in fact, the prosecutor is put on the witness stand and is cross examined. That didn't happen here. But then you didn't ask that that happened here. And indeed, I believe you said you did not think the prosecutor was a racist and you did not think race discrimination was what motivated the strike. So how can we say that the totally apart from whether the facts of the explanation, how can we say that the trial judge who was remembering the demeanor of the prosecutor at the time, especially in light of your statements, was not credible? Well, first of all, a prosecutor doesn't have to be a racist to engage in a Batson violation. Let's be clear about that. Secondly, of course, the First Circuit Court of Appeals can use its own independent and objective judgment in assessing. No, we can't. We cannot. Congress restricted the habeas scope of the federal courts of appeals and the district courts in ADIPA in the ways that I outlined at the beginning of this argument. So again, what is unreasonable about the law court's determination based on this record? The unreasonableness is that it is arbitrary to say that a person with an 11th grade education is less equipped to understand the concept of self-defense than a person with a 12th grade education, especially when we're talking about four white guys coming at you with baseball bats and iron pipes and calling you the n-word, calling you a guerrilla. I don't think it takes a PhD to understand that concept. That's another way of saying the prosecutor lied. Well, the prosecutor engaged in a Batson violation. We're clearly saying that the prosecutor engaged in lying or exaggerating or whatever you want to call it. It was a pretext. It was pretextual. Look, we're in a room of 120 white people and there's one black person. Do you think that prosecutor would have excluded the lone black juror in the room? I know we're in a habeas appeal here, but we can certainly use a little bit of life experience and common sense here. Can I ask a question? I was struck by the three-year sentence that was given. What is the permissible range of sentencing under Maine law for these convictions? He was looking at five years, technically five to ten, but the worst he would have gotten would have been a five-year concurrent sentence on the two class C violations. So, in fact, the trial judge sentenced him to less than he might have anticipated. The judge considered a number of sentencing factors, including the fact that he was a 20-year-old with, I believe, little or no criminal record. This was a pretty egregious case. We had a skinny 20-year-old kid from Philadelphia running into four white guys, literally hitting him with a bat. The facts are certainly sympathetic to you. I'm a bit concerned that a Maine state judge committed such an out-of-the-box error from the very beginning. Maybe this is a question that goes better to your opponent, but Batson's been around for a long time. That was plainly not an appropriate reading of Batson. Maybe it's time to just get rid of peremptory challenges. Maybe it's time to look at these cases more strictly. You know, there's a lot of racism out there. I've been doing this 35 years, and it's a lot tougher to defend blacks than whites. The judge made a mistake. He acknowledged it, but he was troubled by what he was seeing. In a sense, he was saying to the prosecutor, are you sure you want to do this? You're creating some problems here. The judge was aware of the sensitivity of what was happening. That's another point, Judge Lopez. Even at the trial level, Justice Stokes, who we think the world of, is a wonderful judge. Even at the trial level, the judge said, what are you doing here excluding the lone black person? Then, of course, we go before the law court, and the law court said, we're pretty skeptical about what the prosecutor did. Then, we saw Judge Woodcock's lengthy footnote where he's spanking the prosecutor. All the judges looking at this are wringing their hands and saying we're not comfortable with what we're seeing. To go back to the point that Judge Lynch made at the beginning, we are constrained by the law. The law, in this case, includes the federal habeas standards to apply. You're stuck with that too. You have to convince us that there was really an unreasonable determination of fact here, going all the way back to the trial judge. The trial judge, concerned about the situation, says to the prosecutor, you really want to do this. Nevertheless, concludes that there was no pretext in the rationale that was offered. Apparently, looked the prosecutor in the eye, looked at the demeanor specific about that, and says, I take it your reason is not pretext. Maybe this is not a good rationale, but it's rationale and it's not discriminatory. If I might, I have a different understanding of what happened at the trial as opposed to what happened at the later hearing. At the trial, the judge, it was true, was concerned and asked the prosecutor for a reason, but then the judge went off on the tangent of, gosh, to make out a Batson claim, you have to show a systemic violation. At that point, instead of your saying, no, judge, that's wrong, and we need to get on the record now, the full articulation of the reasons. There was not a full exploration at the trial. The full explanation only came from later, but in a sense, when the trial judge made this mistake, you did not tell him you've made a mistake. You agreed and you just moved on. That's a fair point, judge. I do think I preserved my Batson objection, but the mistake was made, nonetheless, and Judge Stokes acknowledged that he made the mistake. He applied an outdated 60-year-old that had been outdated for 21 years by the time Batson came along. Do you have a final statement? If I could just preserve my one or two minutes. Fine. Thank you. Thank you, sir. Please mute your audio and video at this time. Attorney Maycomber, please reintroduce yourself on the record and then proceed. Assistant Attorney General Donald Maycomber for the Warden of the Maine State Prison. May it please the Court, the only question this Court will be deciding is whether the Maine Law Court's decision affirming Hollis' conviction was based on facts supported by evidence presented in the trial court and whether it properly applied the United States Supreme Court's decision in Batson v. Kentucky. The law court found it presumptively correct fact that Hollis failed to carry the burden of proving the record compelled the trial court to find that the state had engaged in purposeful discrimination. The trial court made this finding based on the court's own observation of the prosecutor's demeanor at the time of the challenge, and this Court has previously acknowledged that a trial judge's Batson... No, no. The trial judge made the finding, what, three months later, based on its memory of the demeanor of the prosecutor. No such finding was made at the trial. That's correct, not at the time of the trial judge, but while the matter was still... Okay, so can we go back to my concern? This is a well-respected trial judge who makes, from my point of view, a pretty egregious error about Batson. Maybe in Arusta County, Batson doesn't come up too often, but he then, three months later, reviews matters and corrects his earlier error of law and then relies on his memory and quite correctly excludes reasons that disturb him. It's not that we have any superintendent's powers here, only the main law court does, but you can understand why, even with our limited review, we would be concerned about this situation. Absolutely, Your Honor, and the trial court, to its credit, as Judge Lopez noted, noted that he made a mistake in the initial stages and corrected his mistake, and that's what we want judges to do, and the law court found that... No, we want them not to make the mistake in the first place and to do a contemporaneous... three months later. That's correct, Judge, and obviously, if Mr. Hollis had not filed a motion for a new trial, then this probably would have been retried based on the trial court's error, but as you pointed out when questioning my colleague, when the trial judge made the error, Mr. Hollis's attorney did not say, you made an error, Judge, that's not the law under Batson, and the trial judge wasn't given the current contemporaneous ability to correct the mistake that he had made, which he did a couple months later. You just, maybe I think I may have missed something, Mr. Maycomber. You said he would have been retried if he hadn't. I must have misunderstood what you said. I thought you said... If the matter had gone up on direct appeal, Judge, just based on the original record where the judge said, I find there's no systemic finding of racism or whatever, then that clearly would be in violation of Batson, and the law court would have had no choice but to remand, I would think, on direct appeal. What are we to make of the prosecutor claiming that in this case where race played a huge... I mean, it's a racially tinged case that she didn't notice that 71 was the only black juror. What are we to make of that? Well, what you ought to make of it, Judge, is did the law court and the trial court find that the prosecutor's exclusion of juror 71 was a pretext or not? They found as fact that it was based on the education level, and your job is to determine whether that's unreasonable under AEDPA. Right, and that's why I asked you the question, because in asking whether it's unreasonable, I've got to look at the facts and the record, and one of the facts that jumped out at me was that claim by the prosecutor, and offhand, it would seem to call into question credibility, and then I have to assess whether it did so enough to make it unreasonable as the determination by the judge, but the starting off point is, wow, that seems kind of bizarre. Well, and again, it may seem bizarre to you on a cold record, but the question really, according to Congress, is whether or not the main law court was struck in a bad way, and they weren't. They found that the record supported the trial court's finding that the reason given by the prosecutor was the actual reason. Counsel, you are not giving enough credit to the main law court. The main law court was also concerned about this statement by the prosecutor, thought it was extremely doubtful, but it did not think in the end that that meant it could find the prosecutors. The trial judges three months after the fact finding the prosecutor was credible was undercut by that fact. That's correct, and as my colleague pointed out, at each stage of the litigation, judges have pointed out that they're concerned here. Okay, so my next question is, the main law court, it applied a state clear error rule to this credibility finding made after the fact. Now, your opponent makes nothing out of this, but it does suggest that the review might have been more fulsome than it was. The only review was for clear error. That's true, but based on the trial court's factual finding of the prosecutor's demeanor, it's hard to get around that the trial judge saw the prosecutor when she was making the challenge and found as fact that the reason for that. Aren't you ultimately saying that if the trial judge, if the prosecutor mentions some factor other than race, it's at least not absurd, and the judge then says, I believe you, that I think what you're then saying is that's the end of it. I don't think so, judge, because you also have to give me an example. It's a totality situation. This is a case where they're talking about exclusion of a single minority juror, a person of color, but let's say there were multiple people excluded, and the prosecutor said, I don't like your tie, or I don't like the way you're smiling, or whatever, then that calls into question, or if my colleague had established a pattern of practice, like in the New Orleans cases, like Flowers that he mentioned, where prosecutors routinely found to have committed violations, my colleague here at trial specifically found he was not calling the prosecutor's reasons racist and that the district attorney's office was not racist. His only basis for claiming a pattern violation is that the one person of color was excluded. No, no. He also says, look, it makes no sense, given the nature of this case, to have excluded someone who had an 11th grade education when, in fact, a large number of the Maybe if you only wanted college-educated people, it would be a different matter, but why does it make sense to draw the line at 11th grade? Well, as Judge Cayetta pointed out, during jury selection, sometimes you're called upon to make very quick decisions based on instinct, and since the prosecutor articulated later, when given a chance to flesh out the reasons for the challenge, that self-defense was going to be in the case, which the prosecutor correctly noted was a complex Why is self-defense complex on these facts? It's the obvious defense. There's nothing complex about it. The jury rejected it. The jury instructions are complex. Since I have to draft self-defense jury instructions all the time, and our main law court has even acknowledged in decisions that self-defense jury instructions are pretty incomprehensible. I agree. They are complex, and they can be difficult to apply, but I guess just picking up on Judge Lynch's point, I mean, this notion that if you've had a senior year in high school, you're equipped to deal with this complexity. If you've only had 11 years of high school, you're not. I mean, that is a, I would say, a very vulnerable distinction. I guess your point would be, well, that may be difficult analytically to defend, but that's not the question. If the prosecutor believed it, and put it forth in good faith, that's all that matters. It's not up to you to decide whether it was a good rationale or a bad rationale. I mean, I guess maybe I'm answering the question for you, but I guess that... And I appreciate it, Judge, and you did answer my question, and in fairness to the prosecutor, because of the trial judge's initial error... Four minutes remain. ...the prosecutor wasn't given the opportunity to give a full explanation. Rather, she, sua sponte, offered education... No, no, no, no, no, no. She started by saying, gosh, do I have to answer this question at all? Do you want an explanation from me, Judge? And the judge says, well, yeah, I guess it would be good to get an explanation. She was resistant to the notion that she had to provide any explanation. Because the trial judge found there's no systemic discrimination. So, basically, the trial judge was finding at the time of trial that... Then why didn't the prosecutor know that the trial judge was committing a fairly egregious error in that statement? Surely prosecutors in Maine know about Batson as well as defense counsel. And that's correct, Judge. But the prosecutor took no steps to correct the judge's error, and the prosecutor took no steps to create a fuller record here. Well, and that's true. And Mr. Hollis didn't argue that either, and he had the burden. But the prosecutor... Oh, did he? I thought he met his burden on step one of Batson. The trial judge didn't make that finding at the time of trial, the trial judge said. I know, but if we look at it in retrospect, he had met his burden, yes? Yes, and if the trial judge had said that at the time, then the prosecutor would have been able to say beyond what she did at the time of trial, which was education and other factors, and she fleshed out what the other factors were at the time of the motion hearing a couple months down the road. And the trial judge, I believe, did not include that. Actually, I think the question is the deeper question of whether one can say that the Maine law court decision was unreasonable, either as to the facts or the law. So, do you have a couple of sentences on that? That... I don't think I could say it any better than you just did, Judge Lynch. In fact, that was my closing thing, my little scripted line here. Even if you reach a different conclusion in your own independent judgment, that's not the issue under ADIPA. The issue is whether or not the law court's decision was unreasonable application of the facts of the law, and on this record, you just can't make that finding. In light of this case, have any steps been taken to provide more education throughout the participants in the criminal justice system about the requirements of Batson? I don't know the answer to that, Judge. You're in the Attorney General's office, correct? You defend the state in all of these cases? Yes, I do. And I did discuss when the Maine law court decision, because I do present annually at our Maine Prosecutors Conference, and when this case was decided on direct appeal by the Maine law court, I did present it at the Prosecutors Conference. So, with apologies, Judge Lynch, for correcting something that you said, I just want it understood that we understand this was Androscoggin County and not Aroostook County. Thank you. Yeah, thank you. I think, in fairness to Judge Lynch, I think she was suggesting that Batson issues probably don't come up in Aroostook as often as they may in Androscoggin. All right, perhaps my correction was out of order, but I just wanted to be clear that we understood this happened in Androscoggin County. Yes, thank you. Okay, thank you. I have nothing further unless the court has any further questions. Okay, thank you. Thank you, Judge. Thank you all. Your Honors. Attorney Maycomber, if you could please mute your device at this time. Attorney Hwanek, if you could unmute your device and reintroduce yourself. Two-minute rebuttal. Yes, thank you. Jim Hwanek for the appellant Malik Hollis. May it please the court. If I could just take a minute to respond to Mr. Maycomber's point that had this case gone to the law court without defense filing a motion for new trial, law court would have, quote, had no choice but to remand it to the lower court. That's quite a Sophie's choice for we defense lawyers at the trial level when you've got a kid, 20-year-old kid who's just been sentenced to three years in the main state prison and you think there's been an egregious error on a highly racially charged issue to say, well, let's just go ahead and, you know, within 21 days file a law court appeal rather than try to exhaust all of our remedies at the local level and file a motion for new trial and raise these concerns. I think we did the appropriate thing where I think it was inappropriate and I agree with this. The record was supplemented two or three months after the trial. I think if you really look at the language in Justice Souter's decision in Miller L., he says you can't do that. Even though Flowers is obviously a very distinct case with six murder prosecutions, I think the most recent Roberts Court has resoundingly endorsed Batson. We're asking for local and state courts to apply the U.S. Supreme Court standards in Batson and his progeny. If you don't feel you want to answer this, I completely understand. I was, as you can tell, I was somewhat taken aback by opposing counsel's statement about the possibility of direct appeal. I think I now understand. That does strike me as putting defense counsel in a terrible dilemma. Did you have to think through those options? We did think through those options and we felt like we had some really strong arguments to make to Justice Stokes. We went ahead and made those arguments. The law court actually just came down with a decision where they really aggressively reversed Justice Stokes on a whole issue of questionnaires, how many questions you can ask on race-related issues. Hopefully, we're starting to see some changes here, but we've been frustrated by the way minorities are treated in the court systems. In Maine, we have a very white state. I think month after month, I've done 150 jury trials now since you last sat in that courtroom 25-30 years ago, Judge Lopez. I've done 150 jury trials in Indiscognizant County and been very successful at it. I'm telling you, it's very difficult representing blacks and other minorities. And I just really, going back to Judge Katea's question, I really think the answer is yes, we really should be forcing prosecutors to give bigger explanations, more robust explanations when they're moving to exclude a minority in a jury pool. Time has expired. Thank you. Thank you. Thank you very much. Thank you. That concludes our argument for today. The session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting. Thank you.